Donald F. TACKITT

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, the United States of America and Special Agents Mutual Benefit Association, Inc.**

No. C83–2507A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 11, 1984.

Thomas W. Thrash, Finch, McCraine, Brown & Blank, Atlanta, Ga., for plaintiff.

Ben Kingree, Carter, Ansley, Smith & McLendon, Atlanta, Ga., for defendant Prudential Ins. Co. of America.

Myles E. Eastwood, Asst. U.S. Atty., Atlanta, Ga., for defendant U.S.

Oliver B. Dickins, Jr., Edward Katze, Constangy, Brooks & Smith, Atlanta, Ga., Denis F. Gordon, Gordon & Barnett, Washington, D.C., for defendant Special Agents Mut. Ben. Ass'n.

## ORDER

MOYE, Chief Judge.

The above-styled action is before the Court on the plaintiff's motion for partial summary judgment against the defendants Special Agents Mutual Benefit Association, Inc. (SAMBA) and Prudential Insurance Company of America (Prudential), and the cross-motions for summary judgment of the United States of America (Government) and SAMBA. Also before the court is the plaintiff's motion for preliminary injunction. Jurisdiction is predicated on diversity of citizenship, 5 U.S.C.A. § 701 (West 1977), and 5 U.S.C.A. § 8912 (West Supp. 1984).

## I. BACKGROUND

The plaintiff is a retired Special Agent of the Federal Bureau of Investigation. As such he is eligible to participate in the SAMBA Health Benefit Plan (SAMBA Plan or Plan) pursuant to the Federal Employees Health Benefits Act (FEHBA or Act). The plaintiff has been a member of the SAMBA Plan since 1972.[1]

FEHBA establishes a subsidized health benefits system for federal employees, and during a four-week annual "open season," these employees may choose the insurance plan most suitable to their needs. 5 U.S.C.A. § 8905(e) (West Supp.1984); 5 C.F.R. 890.301(d) (1984). SAMBA is one of the employee organization carriers, which reimburses the cost of health services to its members according to the terms of the SAMBA Plan. The SAMBA Plan is underwritten in part by Prudential.

The plaintiff, a paraplegic with amputations in both lower limbs as a result of injuries received in an automobile accident and subsequent complications of those injuries, has received private duty nursing in his home since October of 1977.[2] The SAMBA Plan covered one hundred percent of the plaintiff's private duty nursing expenses through 1982, after subtraction of the amounts stated in its deductible and co-insurance provisions. The Office of Personnel Management (OPM) requested that the SAMBA and other health benefit plans maintain, in preparing estimates for the 1983 benefit and premium proposals, overall benefit levels at a constant level, possibly by increasing some and decreasing others, in order to "control spending under the Federal Employees Health Benefits Program."[3]

After consulting with Prudential, SAMBA proposed, among other changes, to limit benefits for private duty nursing care to $2,500 per calendar year.[4] This change was one of eight changes SAMBA proposed to OPM after Prudential advised SAMBA that a 30.3% increase in premiums would occur if 1982 benefit levels were maintained.[5] This contract modification was approved by the OPM for the 1983 contract year.

The issues to be decided in the pending motions for summary judgment are as follows: (1) whether plaintiff had a vested right to receive reimbursement for private

---

1. Plaintiff's Affidavit, filed with plaintiff's motion for summary judgment on August 13, 1984, at ¶ 2.

2. Plaintiff's Affidavit, *supra* note 1, at ¶¶ 6 & 7.

3. Government's answers to plaintiff's first interrogatories, Exhibit B, at 2.

4. *Id.,* Exhibits D & E, answering plaintiff's first interrogatories 8 & 9, at 3 & 7.

5. Government's statement of material facts, filed with its motions for summary judgment, August 29, 1984, at ¶ 21.

duty nursing at the benefit level stated in his 1977 contract, (2) whether the reduction of the benefits level for private duty nursing care under the SAMBA Plan violated the statutory requirement to provide "catastrophic" coverage under 5 U.S.C.A. § 8904(4) (West 1967), and (3) whether OPM's approval of the relevant changes in the SAMBA Plan was arbitrary and capricious.

For the reasons stated below, the Court grants the defendants' motions for summary judgment and denies the plaintiff's motion for partial summary judgment. In consequence, it is unnecessary to consider the plaintiff's motion for preliminary injunction, since it is based on the same legal issues as those decided below.

## II. DISCUSSION

### A. *Standard of review*

Under Federal Rule 56, summary judgment should be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the burden of demonstrating that there is no dispute as to any material fact in the case. "In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983).

### B. *Contract interpretation*

■ The plaintiff contends that Prudential and SAMBA have breached their contract with him by failing to consider his entitlement to reimbursement for expenses of private duty nursing care to be vested within the limitations of his 1977 contract with SAMBA. This question is to be decided under federal principles rather than state insurance law, since state law incon-

sistent with the contract is preempted and superseded by the contract provisions under 5 U.S.C.A. § 8902(m)(1) (West Supp. 1984). It is undisputed that the contracts in question are limited in duration to a single year, subject to annual modification or, with proper notice, termination. The plaintiff argues that his rights to private duty nursing expense reimbursement vested under his 1977 contract at the rates stated in that contract. His contention is based on the general principle of insurance contract construction that ambiguities in such contracts are to be construed in favor of the party who did not draft the contract.

■ The coverage language in the plaintiff's 1977 brochure indicates that coverage under "major medical benefits" provides coverage "[s]ubject to the definitions, limitations, and exclusions in this brochure, ... for expenses of the following services and supplies (referred to as 'eligible charges') ..."[6] This coverage language does not refer to "illness" or any synonym thereof, indicating that the risk insured against is the occurrence of medical expenses. Additional coverage language is provided in a conspicuous place at the second page of the brochure. It reads as follows: "The contract may be modified or terminated. However, no such modification or termination will affect adversely any benefit for a *covered service received prior to such modification* or termination."[7] The plaintiff contends that the language just quoted is ambiguous. His argument is as follows:

The language describing the terms under which the contract could be modified gave to Plaintiff a vested right to continuation of benefits for nursing care services at a level no less than that established by the 1977 contract. The language of this contract provided that modification of the contract will not affect adversely 'any benefit for a covered service received prior to such modification or termination.' The term 'benefit' should be construed to mean the 'bene-

---

6. Prudential's motion for summary judgment, filed July 27, 1984, Exhibit G, at 81.

7. Plaintiff's motion for partial summary judgment, filed August 13, 1984, Exhibit B, at 2 (emphasis added).

fits' described under the heading 'Major Medical Benefits' on page 8 of the brochure. The Plaintiff received benefits for nursing care services for a condition which developed prior to the modification which occurred with the 1983 contract. Therefore, that modification could not affect his continued benefits for those services at the levels which existed prior to the modification.[8]

Contrary to the plaintiff's contention, the Court finds this language unambiguous. The contract language does not suggest that modification could not affect continued benefits "at the *levels* which existed prior to the modification." Benefit levels are not mentioned in this coverage language. The right expressly safeguarded by this language from the effect of any subsequent modification is "any benefit for a *covered service received prior to such modification ...*" The result of this language is preservation of the right to reimbursement for services received prior to the modification; a covered service received subsequent to the modification will not be reimbursed at the pre-modification rate. In consequence, the contract language precludes any vested right to receive reimbursement at pre-modification benefit rates for private duty home nursing care.

In accord with this result is a recent case from the Eastern District of Pennsylvania, *Garvey v. Prudential Insurance Co.*, 596 F.Supp. 1119 (E.D.Pa.1984), attached to various of the defendants' motions. The insurance plan involved in *Garvey* provided that modification would not "affect adversely any benefit for an allowable *expense incurred* prior to such modification or termination." *Id.* at 1123. The plaintiff in *Garvey* also argued that the coverage language was ambiguous, and that he therefore had a vested right to reimbursement for expenses of private-duty nursing care without cost limitations resulting from a subsequent modification of these benefits. This lan-

guage, in which the plaintiff finds a substantive difference from that in the Plan, appears to provide precisely the same coverage as the language of the Plan. The *Garvey* court held that this language contained no ambiguity and that the plaintiff had no vested right to reimbursement at pre-modification benefit levels. In addition, the *Garvey* court observed in a footnote that "[e]xpenses are incurred on the date services and supplies are received." *Id.* at 1123 n. 15. Logic and the plain meaning of the contract language dictate the same result in the case sub judice. Accordingly, the Court holds that the plaintiff is subject to the modification of private duty nursing expense reimbursement as provided in the 1983 SAMBA Plan. In addition, since SAMBA is not liable for breach of contract, the issue of the defendant Prudential's liability for this breach need not be reached.

### C. *Catastrophic Coverage*

The plaintiff claims that the action of the Government through its agency, OPM, in contracting with Prudential to provide reduced benefits for private duty nursing care in the home, violated the statutory mandate of the FEHBA to provide coverage for health services of a catastrophic nature.[9] The FEHBA provides that "[a]ll plans contracted for under paragraphs (1) and (2) of this section [relating to 'government-wide' plans] *shall include* benefits both for costs associated with care in a general hospital and for other health services of a catastrophic nature." 5 U.S.C.A. § 8904 (West 1976) (emphasis added).

The plaintiff's claim on this ground must fail, however, because under the FEHBA only "government-wide" plans are required to include benefits for expenses incurred for health services of a catastrophic nature, namely, "service benefit" and "indemnity benefit" plans.[10] The SAMBA Plan, however, is an "employee

---

**8.** Plaintiff's motion for partial summary judgment, *supra* note 7, at 7.

**9.** Complaint, filed November 15, 1983, at 21.

**10.** These plans are defined in *id.* § 8903(1) & (2).

organization" plan.[11] In addition, as the Government notes, even when a government-wide plan is involved, it may be appropriate for OPM to balance the catastrophic coverage requirement against other statutory concerns. *See Doe v. Devine*, 703 F.2d 1319, 1327–28 (D.C.Cir.1983). Therefore, the Court holds that the plaintiff's claim on this ground must be denied.

### D. *Agency review*

■ The plaintiff contends that OPM's renegotiation of the contract with SAMBA and Prudential so as to provide reduced coverage for private nursing care in the home was "arbitrary and capricious" under the terms of the judicial review provision in the Administrative Procedure Act (APA), 5 U.S.C.A. § 706 (West 1977). The APA provides that the Court "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ..." *Id.* § 706(2)(A). No "statutes preclude" the Court's authority to review this action, and since there is law to apply under sections 8902 and 8904 of the FEHBA, OPM's action is not "wholly committed to agency discretion." *Id.* § 701(a)(1) & (2). Under section 706 of the APA, "[t]he judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." *Valley Barge Co. v. United States*, 292 U.S. 282, 286–87, 54 S.Ct. 692, 693–94, 78 L.Ed. 1260 (1934). Furthermore, "the scope of review is a narrow one .... The court is not empowered to substitute its judgment for that of the agency." *McHenry v. Bond*, 668 F.2d 1185, 1190 (11th Cir.1982) (quoting *Bowman Transportation, Inc. v. Arkansas-Best Freight Systems*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974)).

In *Doe*, the court was asked to review contract negotiations by OPM and carriers of a government-wide health benefits plan

under the FEHBA. The court said that contract negotiation did not lend itself to judicial review, given the lack of an accumulated and detailed record and the absence of orderly procedures. Such negotiations are inevitably somewhat ad hoc in nature, said the court, but this does not make them *ipso facto* "arbitrary and capricious." The *Doe* court went on to observe that a reviewing court in this context "must be mindful of the considerable leeway an agency has ... to balance and accommodate competing interests. The agency's judgment must be respected if consistent with the governing law and not unreasonable." Further, the court may permissibly demand "a coherent, even if post-hoc, statement of the agency's bargaining objectives and concerns, that the court may compare against the objectives prescribed by law ...." 703 F.2d at 1326. The objectives prescribed by law in this instance are those stated in the FEHBA and the policy considerations permeating this Act. The primary objectives of the relevant sections of the FEHBA have been catalogued in various decisions reviewing the purposes of the Act and its legislative history as follows: (1) to afford federal employees the maximum in health benefits at the lowest cost to themselves, (2) the minimization of program costs to the government, and (3) preserving a competitive system among FEHBA contractors by considering the interests of insurers in the overall calculus of contract negotiations; to make health benefits to subscribers so generous that they were unacceptable to insurers would defeat this purpose. *Doe*, 703 F.2d at 1328–29; *see also National Federation of Federal Employees v. Devine*, 679 F.2d 907, 912–13 & n. 9 (D.C.Cir.1981).

The *Doe* case involved a challenge to OPM's decision to accept mental health benefit reductions in a carrier's federal health insurance plan as arbitrary and capricious or an abuse of discretion under the

---

11. The FEHBA defines "employee organization" plans as follows: "[Such plans] ... are sponsored or underwritten, and are administered, in whole or substantial part, by employee organizations, ... [and] are available only to individuals and members of their families, who at the time of enrollment are members of the organization." *Id.* § 8903(3).

APA. The court found that OPM's action withstood judicial review because its decision to accept the revised contract was consistent with the objectives of the Act. 703 F.2d at 1334. The *Devine* case involved a 6.5% reduction ordered by OPM in the government's contribution for premium payments for employee health insurance contracts for 1982. The lower court found an abuse of discretion because it said OPM had not considered the effect of benefit cuts on government employees. The appellate court disagreed, holding that the record indicated that OPM had considered the impact of its benefit reduction on the health benefits available to government employees as well as the cost savings to the government. 679 F.2d at 908–09.

The plaintiff objects that these reductions disproportionately affect the four enrollees of the SAMBA Plan to whom benefits for private duty nursing expenses were paid during 1982.[12] The Government, however, notes that the SAMBA Plan paid these four enrollees $270,561.09 to reimburse them for these expenses in 1982. This resulted in a cost for every enrollee in the SAMBA Plan of $12.93.[13] The modification of this benefit would result in a projected savings of $314,191 in costs.[14]

The plaintiff focuses on this aspect of the SAMBA modifications in particular, arguing that OPM's approval of the $15.01 per year per enrollee projected cost savings resulting from the private duty nursing limitation was unreasonable in view of the total cost of the SAMBA Plan:

> The documents submitted in justification of the benefit reduction show that it was estimated that the total cost of the plan would have been $38,371,000.00 in 1983 if benefits had been maintained at the 1982 level. This represents a yearly cost of approximately $1,827.00 per enrollee. Thus, the $15.01 reduction in cost per enrollee represented only an .8%—less than 1%—reduction of the cost per enrollee.

The 1983 contract resulted in a reduction of the estimated cost of nursing care from $324,191.00 to $10,000.00 per year—a 97% reduction. In exchange for this 97% reduction in benefits for nursing care services, a paltry .8% reduction in the total cost of the program was realized.[15]

This argument, while compelling in relation to the plaintiff's unfortunate circumstances, overlooks the fact that this proposed modification was one of eight changes proposed by SAMBA and accepted by OPM. With these eight changes, SAMBA was able to obtain a projected cost savings of $2,398,523, an 8.5% reduction in the total cost of the Plan.[16]

■ The plaintiff asserts that this Court must consider as a disputed material fact the opposing positions of the Government and himself regarding the nature of OPM's action: "when the hardship imposed by a benefits reduction is totally out of proportion to the overall cost savings, there is a point at which the agency's action must be characterized as unreasonable, arbitrary, capricious and an abuse of discretion."[17] The Court disagrees. The facts regarding the actions of OPM are not in dispute, and the question of how to characterize OPM's approval of the submitted SAMBA Plan modifications is a question of law, not of fact.

■ As noted above, this Court's standard of review is a narrow one. Judicial review is bounded by the statutory scheme

---

**12.** Plaintiff's brief in opposition to the Government's motion for summary judgment, filed September 18, 1984, at 4.

**13.** Government's statement of material facts, filed with motion for summary judgment August 29, 1984, at ¶¶ 16 & 17.

**14.** *Id.* at ¶ 20.

**15.** Plaintiff's brief in opposition to the Government's summary judgment motion, *supra* note 13, at 4–5.

**16.** Government's brief in support of summary judgment motion, filed August 29, 1984, at 5.

**17.** Plaintiff's brief in opposition to the Government's summary judgment motion, *supra* note 13, at 4.

that vests OPM with authority. Under the FEHBA, OPM has broad discretionary authority to negotiate and contract for health plan benefits, including the authority to order reductions in benefits. The FEHBA requires that "[e]ach contract ... shall contain a detailed statement of benefits offered and shall include such maximums, limitations, exclusions, and other definitions of benefits *as the Office considers necessary or desirable.*" 5 U.S.C.A. § 8902(d) (West Supp.1984) (emphasis added); *see Devine,* 679 F.2d at 912. Further, OPM has broad discretion to vary the status of the plans. For example, OPM may adjust rates under 5 U.S.C.A. § 8902(i) (West Supp.1984); it may withdraw approval of a health benefit plan or carrier under 5 C.F.R. § 890.205 (1983); and it may bargain for diverse levels of health benefits under 5 U.S.C.A. § 8902(d) (West Supp. 1984). "OPM is obviously not precluded from agreeing to any benefit reductions that may disadvantage some individuals more than others, as long as this decision is not arbitrary or capricious." *Doe v. Devine,* 545 F.Supp. 576, 583 n. 8 (D.D.C. 1982), *aff'd,* 703 F.2d 1319 (D.C.Cir.1983).

The decision by OPM in this case to approve a package of eight plan modifications pursuant to its request that the various plans maintain their benefit levels at a constant rate was consistent with the legislative purposes of the Act. As OPM stated in its letter to SAMBA, "OPM is firmly committed to the need to control spending under the Federal Employees Health Benefits Program. Toward this end, major cost and utilization containment initiatives were introduced in the 1982 contracts .... Each carrier should submit a plan for achieving such cost savings for Federal employees and annuitants."[18] The fact that OPM had an opportunity to consider the effect of the proposed SAMBA Plan changes on the fed-

eral enrollees, including the plaintiff, is amply documented in the record.[19]

The action of OPM in approving these program modifications was apparently pursuant to a reasoned assessment of the legislative purposes underlying the FEHBA.[20] Section 706 of the APA does not require more than a finding that agency action had a rational basis. Accordingly, this Court concludes that OPM was not arbitrary or capricious in approving the limitation on private duty home nursing care in the 1983 SAMBA Plan.

In summary, the Court holds as follows:

(1) the plaintiff's motion for partial summary judgment against SAMBA and Prudential is DENIED,

(2) the cross-motions for summary judgment by the Government, SAMBA, and Prudential are GRANTED, and

(3) the plaintiff's motion for a preliminary injunction is DENIED.

---

**18.** Government's motion for summary judgment, filed August 29, 1984, Exhibit B, at 1.

**19.** In particular, see Government's motion for summary judgment, *supra,* note 19, Exhibit "E" at 7.

**20.** Government's motion for summary judgment, *supra,* note 19, Exhibit B, at 1.