**BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., Plaintiff,**

v.

**DEPARTMENT OF BANKING AND FINANCE, an agency of the State of Florida; Gerald A. Lewis, Comptroller of the State of Florida; United States of America; Office of Personnel Management, an agency of the U.S. Government; Donald J. Devine, Director of the Office of Personnel Management, Defendants.**

No. 83–242 Civ–J–14.

United States District Court,
M.D. Florida,
Jacksonville Division.

July 5, 1985.

J. Stephen O'Hara, Jr. and Betsy C. Cox, Mathews, Osborne, McNatt, Gobelman, & Cobb, Jacksonville, Fla., for plaintiff.

Charles L. Stutts, Asst. Gen. Counsel and Mike Underwood, Dept. of Banking and Finance, Tallahassee, Fla., Dorothea Beane, Asst. U.S. Atty., Jacksonville, Fla., Stephen P. Smith, Washington, D.C., for defendants.

## OPINION

SUSAN H. BLACK, District Judge.

This case came on to be heard on plaintiff's Motion for Summary Declaratory Decree as to Count II, filed herein on September 5, 1984. Defendant United States of America, Office of Personnel Management (hereinafter "OPM") and plaintiff filed a Pretrial Stipulation on September 27, 1984. Defendant Department of Banking and Finance (hereinafter "Florida") filed its Concurrence Of State Of Florida In Pre-Trial Stipulation As To Count II on September 28, 1984. A hearing was held before the Court on December 12, 1984. At the close of the hearing, the Court directed counsel

to file further briefs. In accordance with the Court's direction, plaintiff filed its Supplemental Memorandum, Filed Pursuant To Request Of Court on January 21, 1985. Defendant OPM, filed its Memorandum Of Points And Authorities On Behalf Of The Claim Of The United States on January 21, 1985. Florida filed its response on January 22, 1985. Furthermore, Blue Cross and Blue Shield Association (hereinafter "Blue Cross Association") filed a brief *amicus curiae* on February 12, 1985.

This case of first impression is before the Court for a declaration of the rights and relations of plaintiff and defendants under the Federal Employees Health Benefits Act, 5 U.S.C. §§ 8901–8913 (hereinafter "the Act") and the Florida Disposition of Unclaimed Property Act, Fla.Stat. § 717 (hereinafter "Unclaimed Property Act") in regard to provision VIII(m) of Contract Number CS 1039 (hereinafter "Contract") between OPM and the Blue Cross Association. At issue is the disposition of amounts represented by Federal Employee Program (hereinafter "FEP") benefit checks issued by plaintiff to federal employee benefit recipients which remain uncashed for two years or more.

Plaintiff contends that the defendants have made conflicting and adverse claims to the amounts represented by the benefit checks and seeks a declaration as to how it should dispose of these amounts. Defendant OPM avers that the amounts represented by the benefit checks should be credited to the Special Reserve fund maintained by the Blue Cross Association pursuant to the Act. Defendant Florida contends that the plaintiff should hold the amounts in question until they remain unclaimed for seven (7) years and then deliver them to Florida for administration and disposition pursuant to the Unclaimed Property Act.[1]

**1.** This was the procedure prior to The Act's amendment and the subsequent amendment of the Contract.

**2.** Blue Cross and Blue Shield of Florida, Inc. is not a national corporation. It is confined to the State of Florida. There are different Blue Cross and Blue Shield plans nationwide; they are all separate corporations. *See* Transcript of Mo-

## FINDINGS OF FACT

In the Pretrial Stipulation As To Count II, filed on September 27, 1984, the parties stipulated to the following facts.

1. Under the terms of the agreement entered into between plaintiff, Blue Cross and Blue Shield of Florida, Inc. and the Blue Cross Association,[2] plaintiff authorized the Blue Cross Association to contract with OPM to furnish health benefits through plaintiff to federal employees and annuitants as provided by the Government-wide Service Benefit Program.

2. OPM is authorized by the Act to contract with qualified insurance carriers to provide health benefit plans such as the Government-wide Service Benefit Plan in the case *sub judice*. Based on this authorization, OPM and the Blue Cross Association entered into the Contract.

3. Plaintiff administers health care benefits for enrolled federal employees in Florida pursuant to the terms of the Contract and the aforementioned agreements between plaintiff and the Blue Cross Association. As one of its duties, plaintiff issues FEP checks to federal employee benefit recipients. Occasionally, these checks are not cashed.

4. Congress amended the Act effective September 17, 1978, to add the following language:

> (m)(1) The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

tion for Summary Judgment, p. 14. The Blue Cross Association is a nonprofit corporation organized under the laws of the State of Illinois. It provides central coordinating and administrative services for its approximately ninety-five (95) members which are also nonprofit corporations incorporated in the various states and Puerto Rico. *See* Affidavit of Stanley Gertzman.

5. Subsequently, OPM amended the Contract, effective September 28, 1979, to add the following paragraph at the end of Article VIII:

(m) Payment of benefit checks issued pursuant to this contract shall be voided if the checks have been outstanding for two (2) years. The amounts represented by these checks shall be credited to the Special Reserve. The term "check" shall include any written instrument issued to pay or reimburse the payment of benefits under this contract, including by way of illustration but not limitation, drafts, money orders, and checks. This provision is adopted pursuant to P.L. 95–368, enacted September 17, 1978, to preempt State disposition of unclaimed property acts and acts of similar import.

6. The Special Reserve Fund referenced in that amendment is maintained by the Blue Cross Association pursuant to the Contract terms.

7. Plaintiff is keeping a record of all uncashed FEP benefit checks. Count II of this action is directed to the amounts represented by checks issued by the plaintiff that remained uncashed for more than two (2) years but less than seven (7) years.[3]

8. OPM requests that, under the terms of the Contract, plaintiff credit to the Special Reserve fund the amounts represented by FEP benefit checks issued by plaintiff and uncashed for two years or more.

9. Florida disputes OPM's claim. In its role as administrator of the Unclaimed Property Act, Florida claims that the amounts represented by the unclaimed benefit checks are to be delivered to Florida for administration and disposition pursuant to Section 717 or, alternatively, Section 716, Fla.Stat.

10. The plaintiff makes no claim to the funds in question. It asks only to have a determination as to whether these amounts should be deposited in the Special Reserve Fund maintained by the Blue Cross Association for OPM or be delivered to Florida.

## CONCLUSIONS OF LAW

The Court has jurisdiction of this Count II action for declaratory decree pursuant to 5 U.S.C. § 8912; 28 U.S.C. § 1331 (together with 5 U.S.C. §§ 702 and 703); and 28 U.S.C. § 1346(a) in that this is a civil action against the United States founded on 5 U.S.C. § 8901, *et seq.* In order to determine the disposition of the funds, the Court will examine the history of The Act. Then, the Court will apply a two-part test to determine which defendant should be awarded the funds held by the plaintiff, Florida Blue Cross. The first part of the test will determine whether OPM's claim preempts Florida's. The basic precepts of federal preemption will be analyzed and then applied to the legislative intent of Congress when it passed Section 8902(m)(1). Recent court decisions that interpret The Act will be examined in light of federal preemption. Second, having made a finding regarding federal preemption, the Court will determine whether OPM had the authority to amend the Contract.

*History of the Act*

In 1959 Congress established the FEP to provide health benefits for federal employees and annuitants, retired employees. This was codified as The Act, 5 U.S.C. §§ 8901–8913. Under this program, the government contributes part of the premium cost and the employee pays the remainder. *Id.* at § 8906. Employee contributions are then paid into the Federal Employees Health Benefits Fund which is held in the United States Treasury exclusively for the payment of health benefits for the FEP subscribers. *Id.* at § 8909.

The FEP is administered by the OPM.[4] In 1960, OPM contracted with the Blue Cross Association to establish the Government-Wide Service Benefit Plan authorized by The Act. Until Congress amended The

---

**3.** The amounts representing checks uncashed for seven (7) years or more were the subject of Count I. They have been deposited with the Court.

**4.** Prior to 1979, OPM was called the Civil Service Commission.

Act in September of 1978, the Blue Cross Association remitted uncashed checks to each state where there was an applicable unclaimed property law.[5] In states where there was no such law, the checks were returned to the FEP. (Audit Policies and Procedures Bulletin No. 4, FEP, October 29, 1976).

After congressional amendment of The Act, OPM and the Blue Cross Association amended their contract to provide for the federal preemption of state disposition of unclaimed property acts. The effect of this contract amendment was to ensure that all uncashed checks were returned to the special reserve of the Blue Cross Association.[6] Employees' rights to these checks are not extinguished by the amendment. Any employee who presents a claim for an uncashed benefit check may receive a reissued check.[7] The Blue Cross Association immediately implemented this contract change. *See* Audit Policies and Procedures Bulletin No. 4, October 3, 1979. All state Blue Cross plans have acquiesced and have remitted uncashed checks to the special reserve except the Florida plan.[8]

### Federal Preemption of State Law

The Supremacy Clause of the Constitution, Article VI, Clause 2, provides that federal law preempts the operation or exercise of incompatible or conflicting state legislation. The United States Supreme Court has stated, "(t)he law of the State, though enacted in the exercise of powers not controverted, must yield when incompatible with federal legislation." *Sperry v. State of Florida,* 373 U.S. 379, 384, 83 S.Ct. 1322, 1325, 10 L.Ed.2d 428 (1963) (citation omitted). In defining federal preemption, the Supreme Court stated:

> The criterion for determining whether state and federal laws are so inconsistent that the state law must give way is firmly established in our decisions. Our task is to determine whether, under the circumstances of this particular case, [the State's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.... This inquiry requires us to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written.

*Jones v. Rath Packing Co.,* 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977) (citations omitted).

■ In deciding whether federal law preempts a state statute, the Court must ascertain Congressional intent in enacting

---

**5.** In general, state unclaimed property laws specify the time when unclaimed property is considered abandoned. These laws delineate reporting requirements for holders of unclaimed property and procedures for turning over property to the state when it is deemed abandoned. At present, statutory requirements vary considerably from state-to-state. (Brief Amicus Curiae of the Blue Cross and Blue Shield Association in Support of Defendant, United States Office of Personnel Management [hereinafter "Amicus Brief"]. For example, states differ as to what the value of the unclaimed property must be before a holder is subject to the state's reporting requirements. Arizona has a minimum value of $5.00; Florida, $25.00; Kansas, $3.00; Vermont, $10.00; and West Virginia, $50.00. Ariz.Rev.Stat.Ann. § 44–361 (West 1967); Fla.Stat.Ann. § 717.12 (West 1969); Kan.Stat.Ann. § 58–3912 (1983); Vt.Stat. Ann. tit. 27, § 1220 (1975); W.Va.Code § 36–8–11 (1984). States' laws also differ as to the time at which property is presumed abandoned. For example, Arizona deems unclaimed property abandoned after seven (7) years; Iowa, ten (10) years; and Washington, five (5) years. Ariz.

Rev.Stat.Ann. § 44–359 (West 1967); Iowa Code § 556.9 (1984); Wash.Rev.Code § 63.29.020 (1983). *See* Amicus Brief at 12, 13.

**6.** This special reserve is used for benefit payments in future years. The level of this reserve can be a factor in determining future rates and benefits. Blue Cross and Blue Shield Association Federal Health Benefits Program, Contract No. CS 1039, January 1, 1984, Art. VII(a), VIII(b)(2)(3).

**7.** *See* Administrative Manual, FEP, 2.46. This uncashed checks provision does not work an escheat of funds to the federal government since there is not a permanent turnover. Florida, in a letter from Michael J. Coniglio to Wm. Soloman, October 5, 1981, and in the Supplemental Brief in Response to Briefs of Blue Cross and Blue Shield Association and the United States of America, filed February 6, 1985, at 10, stated that it could also provide this service under its Unclaimed Property Act.

**8.** *See* Affidavit of Stanley H. Gertzman at 3.

the federal statute at issue.[9]  *Metropolitan Life Insurance Co. v. Massachusetts,* — U.S. —, —, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985).  In keeping with the Supreme Court's direction to "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Park 'n Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. —, —, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985) (slip op. 4), the Court will next analyze the legislative history of the recent amendment as the first part of its two-part test.

### Legislative History of the Preemption Provision in the FEP Act

The original impetus for the amendment came from a report to Congress by the United States Comptroller General that identified various attempts by states to require the inclusion of special health benefits plans in the FEP.[10]  A bill to preempt state law was introduced.  H.R. 2931, 95th Cong. 1st. Sess. (1977).[11]  OPM favored this bill and testified that it would give the agency the preemptive relief it needed for "administrative matters, and in terms of benefit matters."  *Uniformity in Federal Employee Health Benefits and Coverage: Hearing Before the Subcomm. on Civil Service and General Services of the Senate Comm. on Governmental Affairs.* 95th Cong. 1st Sess. 6 (1977) (hereinafter "Senate Hearing").[12]

■  It is clear from both the House and Senate reports that Congress not only considered preemption when it passed the legislation but also intended to preempt all state insurance laws except those regulating premium taxes and mandatory reserves.[13]  Sen.Rep. No. 903 at 4, U.S.Code

9.  The Supreme Court has considered several criteria to apply when determining whether federal law preempts a state statute.  Other than Congressional ordination, these criteria include: (1) if the nature of the regulated subject matter permits no other conclusion but preemption, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963); *De Canas v. Bica,* 424 U.S. 351, 356, 96 S.Ct. 933, 936, 47 L.Ed.2d 43 (1976); and (2) if the state law violates the supremacy clause by standing as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *Florida Lime & Avocado Growers, Inc.,* 373 U.S. at 141, 83 S.Ct. at 1216.  In the case at bar, this criteria is satisfied.  Since uniformity was clearly one of the accomplishments Congress desired, and Florida is the only state not in compliance, the federal Act should preempt Florida's state statute.

10.  For example, some statements mandated recognition of the services of chiropractors while others required benefits for treatment of drug abuse.  Report of the Comptroller General of the United States, *Conflicts Between State Health Insurance Requirements and Contracts of the Federal Employees Health Benefits Carriers* (No. MWD–76–49 Oct. 17, 1975).

11.  The first bill, H.R. 12114, 94th Cong., 2d Sess. (1976) was introduced during the 94th Congress and passed the House on the Consent Calendar; however, it was not enacted into law during that session.  H.R.Rep. No. 282, 95th Cong., 1st Sess.

1 (1977), Ex. 5.  The bill, H.R. 2931, introduced during the 95th Congress, was identical to H.R. 12114.

12.  In his testimony on behalf of OPM, Thomas Tinsley, Director of the Bureau of Retirement, Insurance and Occupational Health, stated that OPM was concerned with several state laws that were causing administrative problems and lack of uniformity of benefits.  Senate Hearing, at 2–3, 10.  He cites as examples some state procedural and administrative requirements concerning the age of dependents, the conversion of contracts after termination of employment, and the types of information furnished to an employee.

13.  Testifying on behalf of OPM, Thomas A. Tinsley, Director of the Bureau of Retirement, Insurance and Occupational Health declared that when states enforced unique requirements created exclusively by one state for its own benefit, this created great administrative difficulty since OPM administers over seventy different carriers and has worldwide coverage.  *Id.* at 3.  Furthermore, in letters to both the House and Senate committees, OPM stated that state laws which interfered with administration of the insurance plans caused an impossible situation when FEP carriers were exposed to varying requirements from state to state and caught by conflicts between the states and the program's requirements.  This lack of uniformity was intolerable.  OPM further stated that although The Act superseded state laws that interfered with it, without the new bill, the only remedy for OPM was costly litigation with each state under the su-

Cong. & Admin.News 1978, pp. 1413, 1415; H.R.Rep. No. 282 at 4–5. Section 8902(m)(1) of The Act provides that the provisions of any FEP contract "which relate to the nature or extent of coverage or benefits (including payments with respect to benefits)" shall preempt any state law inconsistent with such contractual provisions. The uncashed checks provision in the Blue Cross Association contract relates to "payments with respect to benefits"[14] as stated in The Act. The Court finds Congress unmistakenly ordained that the federal law preempt a state statute; thus, The Act preempts the Unclaimed Property Act of Florida.

This Court's finding of preemption is in keeping with other recent decisions. Thus far, courts have interpreted the preemptive scope of Section 8902(m)(1) broadly. In particular, courts have found that state statutes of limitations on the time period in which subscribers may sue are preempted by time limits provided in the contract. See LaBelle v. Blue Cross & Blue Shield United of Wisconsin, 548 F.Supp. 251 (W.D.Wisc.1982).[15] Analogous to state statute of limitations laws, state unclaimed property laws subject carriers to differing requirements[16] and adversely affect the uniform administration of benefit payments under the FEP. This is contrary to the congressional intent and the purpose of Section 8902(m)(1).[17]

Thus, the first part of the Court's test is satisfied. Federal law, Section 8902(m)(1), preempts the Unclaimed Property Act. Consistent with the basic tenets of federal preemption and the recent interpretations of this statute by federal courts that affirm this intent, Section 8902(m)(1) was intended to preempt conflicting state laws.

The Court will next examine the second part of its test and determine whether OPM had the authority to amend the contract in the case at bar.

### OPM's Power to Contract and Interpret the Statute

Pursuant to The Act, a health benefits contract was negotiated between OPM and the Blue Cross Association. The Act granted OPM broad discretionary authority to negotiate, contract for, and approve the benefits offered to federal employees by health carriers. Nat'l Federation of Federal Employees v. Devine, 679 F.2d 907, 912 (D.C.Cir.1981).

■ Although OPM's decisions are reviewable, its judgments must be sustained "if consistent with the governing law and not unreasonable." Doe v. Devine, 703 F.2d 1319, 1326 (D.C.Cir.1983). The United States Supreme Court has stated, "(w)hen faced with a problem of statutory construction, (a court should show) great deference to the interpretation given the statute by the officers or agency charged with its administration." Udall v. Tallman, 380

---

premacy clause of the Constitution. Sen.Rep. No. 903, 95th Cong., 2d Sess. 7–8 (1978); H.R. Rep. No. 282, 95th Cong. 1st Sess. 6–7 (1977).

**14.** Florida argues for a narrow interpretation of The Act's preemption provision. However, The Act provides for preemption of laws affecting benefits, coverage, and payments with respect to benefits. If Congress had intended a narrow interpretation of preemption, it would have drafted the provision to clearly state that it applied only to mandated benefit statutes.

**15.** See also Richards v. Blue Cross/Blue Shield of Florida, Inc., No. 83–21719, slip. op. at 1 (Fla. Cir.Ct. Nov. 30, 1984) (contractual statute of limitations preempts state statute of limitations), Ex. 15; White v. Associated Hospital Services, Inc., No. 507–291, slip. op. at 2 (Wis.Cir.Ct. Sept. 23, 1980) (same), Ex. 16; Rogers Memorial

Hospital v. Keast, No. 78–CV–356, slip. op. at 4 (Wis.Cir.Ct. Apr. 18, 1980) (same), Ex. 17; cf. Arnold v. Blue Cross and Blue Shield of Florida, No. 83–00429, slip op. at 1 (Fla.Cir.Ct. Apr. 21, 1983) (section 8902(m)(1) preempts Florida's attorneys' fee statutes), Ex. 18; Oleniacz v. Blue Cross and Blue Shield of Florida, Inc., No. 82–8163–15, slip. op. at 2 (Fla.Cir.Ct. Mar. 8, 1983) (same), Ex. 19.

**16.** See supra note 5 and accompanying text.

**17.** See Tackitt v. Prudential Insurance Co. of America, 595 F.Supp. 887, 890 (N.D.Ga.1984) where the court found that a question of insurance law was to be decided under federal principles rather than state insurance law since inconsistent state law was preempted and superseded by the contract provisions under 5 U.S.C. § 8902(m)(1).

U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Such deference is particularly due when the administrative practice at issue involves the agency's contemporaneous construction of the statute in question. *See Power Reactor Develop. Co. v. International Union of Electrical, Radio and Machine Workers*, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961), *citing Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933). The final determination as to coverage is made by OPM, and the contract then defines which benefits are to be provided. *Garvey v. Prudential Ins. Co. of America*, 596 F.Supp. 1119, 1120 (E.D.Pa.1984).

■ OPM construed the legislation to apply to state laws affecting the administration of benefits or coverage and benefit payments. Instanter OPM amended the Blue Cross Association's federal contracts to accord with the passage of Section 8902(m)(1). The Court finds the second part of its test is satisfied. OPM was granted the broad discretionary authority pursuant to Sections 8901–13 to amend the Contract, and OPM's subsequent amendment was consistent with governing law and the intent of Congress.

### CONCLUSION

The Court finds it was the legislative intent for Section 8902(m)(1) to preempt any conflicting state law. Recent court decisions indicate that the federal government's preemptive powers are being broadly interpreted in dealing with Section 8902. Furthermore, OPM is granted the authority under Sections 8901–13 to contract with carriers such as the Blue Cross Association. Section 8902(m)(1) preempts the Unclaimed Property Act. The clear language of the contract states that "amounts … shall be credited to the Special Reserve." Thus, the funds held by Blue Cross and Blue Shield of Florida, Inc. are to be credited to the Special Reserve of the Blue Cross Association.

The Court on this date will enter judgment in accordance with this Opinion.