**BLUE CROSS & BLUE SHIELD OF FLORIDA, INC., a corporation, Plaintiff-Appellee,**

**v.**

**DEPARTMENT OF BANKING AND FINANCE, an agency of the State of Florida, and Gerald A. Lewis, Comptroller of the State of Florida, Defendants-Appellants,**

**and**

**United States of America, Office of Personnel Management, et al., Defendants-Appellees.**

**No. 85–3641**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

June 24, 1986.

Rehearing and Rehearing En Banc
Denied July 28, 1986.

---

R. Michael Underwood, Office of the Comptroller, Tallahassee, Fla., for defendants-appellants.

J. Stephen O'Hara, Jr., Jack W. Shaw, Jr., Jacksonville, Fla., for Blue Cross & Blue Shield of Fla., Inc.

Philip S. Neal, Terry B. Dowd, Stacy P. Fischer, Washington, D.C., for amicus curiae; Blue Cross & Blue Shield Ass'n.

Stephen P. Smith, Office of Gen. Counsel, Thomas F. Moyer, Office of Personnel Management, Washington, D.C., for U.S. and Office of Personnel Management.

James R. Barnett, David M. Ermer, Washington, D.C., for amicus curiae; Ass'n of Federal Health Organizations.

David J. Epstein, Los Angeles, Cal., for amicus: Nat. Ass'n of Unclaimed Property Admin.

Before TJOFLAT, VANCE and KRAVITCH, Circuit Judges.

PER CURIAM:

At issue in this appeal is the relationship between state unclaimed property law and the federal employees' health benefit program. The dispute is over what happens to health benefit payments that remain unclaimed for seven years. Florida law dictates one disposition, the federal government's contract with one benefit provider dictates another. The district court, 613 F.Supp. 188, held that the federal contract preempts the state law. We affirm.

I.

The Service Benefit Plan is one of a number of health insurance plans which the federal government makes available to its employees and partially funds. This plan is coordinated nationwide by the Blue Cross Association and operated in Florida by the plaintiff, Blue Cross and Blue Shield of Florida, Inc. Because the legal distinction between the Florida organization and

the national group is unimportant here, we refer to both as "Blue Cross."[1]

In the course of business, Blue Cross issues a large number of benefit checks. Some of these checks remain uncashed for quite some time. The government's contract with Blue Cross specifies that benefit checks outstanding for two years or more shall be voided and credited to the "Special Reserve," the Service Benefit Plan's fund for the net excess of premium payments over claims and expenses. None of the parties to this action has any quarrel with this provision.

The dispute in this case is over what should happen to funds which remain unclaimed for *seven* years. Florida's Department of Banking and Finance ("Florida") argues that under the state's Unclaimed Property Act, Fla.Stat. ch. 717, the funds must be turned over to the state, which will then search for the owner. The federal Office of Personnel Management ("OPM"), on the other hand, contends that the state law is preempted by the contractual provision requiring Blue Cross to credit unclaimed funds to the Special Reserve. That provision was, by its terms, "adopted pursuant to [5 U.S.C. § 8902(m)(1)] . . . to preempt State disposition of unclaimed

property acts and acts of similar import." OPM thus argues that the funds should stay in the Special Reserve, awaiting their owners. Faced with these conflicting claims, Blue Cross brought this interpleader action, naming Florida and OPM as defendants. The district court entered a summary declaratory decree in favor of OPM.[2]

Section 8902(m)(1) states that the provisions of any federal health benefit contract under that chapter

> which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law . . . which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

5 U.S.C. § 8902(m)(1). The defendants agree that the government's Blue Cross contract falls within the ambit of the section and that the contractual provision in question both relates to "payments with respect to benefits" and is inconsistent with the Unclaimed Property Act.[3] The only disagreement between Florida and OPM[4] concerns whether the state statute

**1.** The two organizations have, however, taken different stands in this litigation. Blue Cross of Florida, as the plaintiff, is remaining neutral. The national association filed an amicus brief in support of OPM.

**2.** The district court's decree dealt only with Count II of Blue Cross' original complaint, which concerned funds which had been unclaimed for two years or more but less than seven years. Count I concerned funds unclaimed for seven years or more. Blue Cross deposited the Count I funds with the court and was discharged from liability with respect to that count.

**3.** In an amicus brief, the National Association of Unclaimed Property Administrators [NAUPA] suggests that the two laws do not actually conflict because the Florida law applies not to the actual unclaimed funds, but rather to the obligation to pay the funds. Florida apparently does not interpret its own law in this manner, and the district court did not discuss this argument in its opinion. We thus decline to consid-

er it here. For the same reason, we do not address NAUPA's contention that some of the unclaimed benefit checks may not be covered by the Blue Cross contract and hence that the disposition of those funds may still be controlled by state law.

**4.** Our disposition renders it unnecessary to consider OPM's contention that it has the power to preempt state laws affecting the federal health insurance program even in the absence of section 8902(m).

Florida and amicus NAUPA raise one other point worthy of only brief discussion. They argue that because only a state may exercise escheat or parens patriae power, a federal law which purports to award custody of unclaimed property to a private entity (such as Blue Cross) or to the federal government itself is constitutionally infirm. This argument is meritless. The OPM contract does not "give" the property in question to either Blue Cross or to the government; it requires only that the funds be held in the Special Reserve, awaiting their owners. Even though unclaimed property is tradi-

is one "which relates to health insurance or plans." We conclude that it is.

## II.

### A.

As the court below correctly noted, an attempt to ascertain the meaning of a federal statute "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985). In this case, that assumption proves incorrect. It is impossible to know from the face of the statute whether a law of general applicability such as the Unclaimed Property Act "relates to health insurance or plans" within the meaning of the statute, or whether the provision applies only to state law specifically directed toward insurance coverage.

We are assisted, however, by the Supreme Court's construction of "relates to" in a similar context. In *Shaw v. Delta Air Lines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Court interpreted the preemption provision of the Employee Retirement Income Security Act, 29 U.S.C. § 1144(a), which provides that ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." Finding that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a

plan," the Court noted that it "must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning." 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. We see no meaningful difference on the face of the statute between Congress' use of "relates to" in ERISA and its use of the same words in section 8902(m). Thus, we must determine whether there is good reason to believe Congress intended "relates to" to mean something other than the liberal definition given the term in *Shaw.*

### B.

■ As did the Court in *Shaw,* we turn to the legislative history.[5] The district court, after examining the relevant committee documents, found that Congress unmistakeably ordained that laws such as the Unclaimed Property Act be preempted when inconsistent with federal health program contractual provisions. We do not find the legislative history quite so clear.

The House committee report on the future section 8902(m) was entitled "Preemption of State Laws Inconsistent with Federal Employee Health Benefits Program." H.Rep. No. 282, 95th Cong., 1st Sess. 1 (1977). The statement of purpose states that the bill would provide for preemption of state laws "inconsistent with ... contractual provisions." *Id.* The official statements of the Civil Service Commission and the White House contain similar re-

---

tionally the responsibility of the state governments, there is certainly no constitutional problem with Congress authorizing such a contract. We had thought that the day had passed when a congressional action could be challenged simply on the ground that it is taken within a sphere of traditional state control. *See, e.g., Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 1017, 83 L.Ed.2d 1016 (1985). Any federal preemption of Florida's unclaimed property law is unquestionably valid as an exercise of Congress' power over federal personnel matters. *See United States v. Oregon,* 366 U.S. 643, 648–49, 81 S.Ct. 1278, 1280–81, 6 L.Ed.2d 575 (1961).

5. The *Shaw* court also looked to the structure of the ERISA preemption provision, finding that "[t]o interpret [the section] to preempt only state laws specifically designed to affect employee benefit plans would be to ignore the remainder of [the section]. It would have been unnecessary to exempt generally applicable state criminal statutes from preemption ..., for example, if [the section] applied only to state laws dealing specifically with ERISA plans." *Shaw,* 463 U.S. at 98, 103 S.Ct. at 2900. Although there is a limited exemption from preemption in section 8902(m)(2), it indicates nothing about Congress' intent as to the question before us.

marks. *See id.* at 5–7. These statements suggest an intent to preempt *any* inconsistent state law no matter how tenuous its relation to insurance. On the other hand, other parts of the report indicate that the "evil" Congress intended to address was state "health insurance requirements." *See, e.g., id.* at 2–3. The Commission's official statement likewise indicates that the Commission's concern was with uniformity of benefits and coverage, not with uniformity of all aspects of program administration. *See id.* at 6–7.

The House report's "analysis" section states that

> the effect of this amendment is to preempt the application of State laws and regulations which specify types of medical care, providers of care, extent of benefits, coverage of family members, age limits for family members, or other matters relating to health benefits or coverage ... However, the amendment is not intended to apply to State or local laws relating to the taxation of health insurance carriers or to the maintenance of special reserves.

*Id.* at 4. The district court concluded, apparently from this statement, that Congress "intended to preempt all state insurance laws except those regulating premium taxes and mandatory reserves." We read the statement differently. It does not suggest that reserves and taxes are the *only* state requirements not subject to preemption. Indeed, the familiar principle of ejusdem generis suggests that the phrase "other matters relating to health benefits or coverage" limits preemption to matters specifically directed toward such benefits or coverage. None of the specific items mentioned—types of care and providers, age limits, extent of benefits, family member coverage—are requirements of general applicability similar to an unclaimed property law.

The Senate committee report, and the House and Senate committee hearings on the subject, are similarly unrevealing. *See*

S.Rep. No. 903, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News 1413; *Exemption of Federal Employees Health Benefits Program from Certain State Laws: Hearings on H.R. 12114 Before the Subcomm. on Retirement & Employee Benefits of the House Comm. on Post Office & Civil Service,* 94th Cong.2d Sess. (1976); *Uniformity in Health Benefits & Coverage: Hearings on H.R. 2931 Before the Subcomm. on Civil Service & General Services of the Senate Comm. on Governmental Affairs,* 95th Cong., 1st Sess. (1977). In sum, we find that the legislative history reveals little about what Congress actually meant by "relates to." We must, however, remember the words of the Supreme Court in *Shaw:* we must accept the "connection with or reference to" definition *unless there is good reason to believe Congress intended a more restrictive meaning.* Although Congress' intent is ambiguous, we cannot say that there is "good reason to believe" a more restrictive definition was intended. Therefore, we conclude that a state law "relates to health insurance or plans" within the meaning of section 8902(m) if it has a connection with or reference to such insurance or plans.

### C.

■ This, however, does not end our inquiry, for we must still determine whether Florida's unclaimed property law has a connection with or reference to health insurance. In *Shaw,* the Supreme Court held that New York's Human Rights Law forbidding discrimination in "terms, conditions and privileges of employment" had a "connection with or reference to" employee benefit plans, and was thus preempted insofar as it was inconsistent with ERISA. On the other hand, the Court noted that some state laws "may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Although "express[ing] no views about where it would

be appropriate to draw the line," 463 U.S. at 100 n. 21, 100 S.Ct. at 2901–02 n. 21, the Court noted the second circuit's decision in *American Telephone & Telegraph Co. v. Merry,* 592 F.2d 118, 121 (2d Cir.1979), where the court found that a state's garnishment of a spouse's pension income to enforce alimony and support orders is not preempted by ERISA.

Exactly where the line of "relation" should be drawn is a difficult question, and it is one that we leave for another day. OPM, which administers the federal health benefit program, found that preemption of the unclaimed property law was permitted under section 8902(m). Although not conclusive, this "interpretation given the statute by the ... agency charged with its administration" is entitled to "great deference." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). To sustain OPM's application of section 8902(m), "we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Unemployment Compensation Commission v. Aragon,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946). We need only find that OPM's determination that the unclaimed property law "relates to" health insurance or plans is reasonable.

The Florida law purports to direct the disposition of unclaimed health insurance benefits still in the hands of the benefit provider. Given this and the ambiguous legislative history, it is reasonable to conclude that the Florida law has a connection with health insurance and thus satisfies the *Shaw* definition. Although the opposite conclusion might also be reasonable, OPM's determination is entitled to deference.[6] Thus, we hold that to the extent that OPM's contract with Blue Cross dictates a different disposition, the contract preempts Florida's Unclaimed Property Act.

6. Although OPM has considerable leeway in this area, we do not, of course, hold that *any* deter-

The judgment of the district court is AFFIRMED.

mination of preemption by OPM is necessarily reasonable.